# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | |
| : | CHAPTER 13 |
| MYSTERY NICOLE SCHAPPELL, : | |
| : | CASE NO. 1:23-bk-00051-HWV |
| Debtor. : | |
| : | |
| ISSAC M PAULEY, : | |
| : | ADV. CASE NO. 1:23-ap-00068-HWV |
| Plaintiff. : | |
| : | Nature of Proceeding: 02 Other (e.g., other actions that would have been brought in state court if unrelated to bankruptcy); 72 Injunctive relief - other |
| MYSTERY NICOLE SCHAPPELL and : | |
| CHASE SCHAPPELL, : | |
| : | |
| : | |
| Defendants. : | |

## **MEMORANDUM OPINION**

This matter comes before the Court following a trial on the Complaint filed by the Plaintiff seeking declaratory and injunctive relief regarding the parties' respective rights to use a previously shared driveway between their properties. (Doc. 1.) For the following reasons, the Court concludes that the Defendants do not hold a valid express easement to use the driveway and have failed to establish an implied easement by necessity or prior use. The Court further concludes that the Defendants' equitable arguments, while acknowledged, do not satisfy the strict legal requirements for easements under Pennsylvania law. As such, the relief requested by Plaintiff will be granted.

I. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) as it concerns the administration of the estate. (*See* Docs. 1, 6.) Even if this matter were deemed non-core, the Court finds that it has jurisdiction to enter a final judgment based on the parties' consent. (*Id.*); *see also Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014) ("If all parties 'consent,'

1

[Section 157(c)(2)] permits the bankruptcy judge 'to hear and determine and to enter appropriate orders and judgments' as if the proceeding were core.").

## II. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

This case involves a dispute between two neighbors regarding the continued use of a previously shared driveway between their properties. The Plaintiff, Isaac M. Pauley ("Pauley"), owns the property at 228 Notch Road, Duncannon, Pennsylvania, while the Defendants, Mystery N. Schappell and Chase X. Schappell (collectively, the "Schappells"), own the property at 226 Notch Road, Duncannon, Pennsylvania. Testimony established that the driveway lies between the two properties, which were initially part of a single parcel owned by Gary E. and Vicki C. Theurer (the "Theurers"). (Doc. 18, p. 27.)[1] The Theurers subdivided the parcel into two separate properties, which Pauley and the Schappells now own. (*See* Exhibits A, B, C, G.)

The conveyance history for the parties' respective properties is as follows:[2]

| Pauley Property<br>228 Notch Road | Schappell Property<br>226 Notch Road |
|---|---|
| Gary E. Theurer and Vickie C. Theurer to Harry E. Hammaker and Beryl R. Hammaker – November 13, 1973 (Exhibit C) | Gary M. Theurer and Vickie C. Theurer to Melvin R. Fetterhoff and Blanche V. Fetterhoff – April 7, 1976 (Exhibit G) |
| Harry Hammaker to Wanda K. Kreiger – January 30, 2004 (Exhibit D) | Melvin R. Fetterhoff to Jeffrey S. Louden – July 30, 1991 (Exhibit H) |
| Wanda K. Kreiger to George Lowe and Shari Lowe – November 17, 2006 (Exhibit E) | Jeffrey S. Louden and Lisa A. Louden to Mystery N. Schappell and Chase X. Schappell – August 28, 2018 (Exhibit B) |
| George Lowe and Shari Lowe to Brian Decker and Natasha Decker – September 26, 2007 (Exhibit F) | |
| Brian and Natasha Decker to Isaac Pauley – July 23, 2020 (Exhibit A) | |

---

[1] For ease of reference, and where appropriate, the Court utilizes the page numbers from the CM/ECF footer.

[2] (*See* Doc. 18, pp. 8–9.)

On July 31, 1991, Melvin R. Fetterhoff, Harry E. Hammaker, and Beryl R. Hammaker signed an agreement professing to establish shared driveway use, although it was not recorded until October 1, 2007. (Exhibit I.) The agreement provides that the parties had "jointly put in a driveway that goes through each property in various proportions" and had "continued to use this as a driveway to their mutually owned premises for and during the time since 1973." (Exhibit I; *see also* Exhibit J.) However, it is undisputed that this agreement was signed one day after Melvin R. Fetterhoff conveyed his interest in what would become the Schappells' property to Jeffrey S. Louden. (*See* Exhibits H and I.)

The respective owners of both properties shared the driveway until Pauley purchased his property in July 2020 and took steps to exclude the Schappells from accessing it.[3] (Doc. 18, pp. 14–15, 45–47.) Pauley testified that he wished to "separate the properties" by relocating his driveway, planting a tree line, and otherwise altering the property to better suit his needs. (*Id*. at 15.) He also stated that he would not have purchased the property had he known of potential disputes regarding the driveway.[4] (*Id*. at 30.)

Similarly, Mystery Schappell testified that she would not have purchased her property had she known she could not use the driveway to access her garage and parking area. (*Id*. at 36, 42.) While she acknowledged that her property can be accessed from Notch Road without the driveway, she stated that the configuration of her home, including the location of the parking area and septic system, prevents the construction of an alternative driveway. (*Id*. at 39–40, 43–44.) She also testified that she could access the property by driving or walking through her

---

[3] The relationship between the parties concerning the driveway appears contentious. (Doc. 18, pp. 45–47.)

[4] On this point, Pauley testified that he had observed "someone else using the driveway" before purchasing the property but believed it was merely a matter of "convenience" rather than a legal right. (Doc. 18, pp. 29–31.)

3

Case 1:23-ap-00068-HWV    Doc 22    Filed 02/05/25    Entered 02/05/25 14:26:47    Desc
Main Document    Page 3 of 12

yard but that neither option is practical due to the yard's uneven, uphill terrain and her medical conditions. (*Id.*) Nonetheless, she recognized that access by either method is possible. (*Id.*)

The Court conducted a trial on September 12, 2024, during which it heard testimony from Pauley and Mystery Schappell. (Doc. 16.) Both parties submitted post-hearing briefs. (Docs. 17, 19, 20, 21.) The matter is now ripe for decision.

## III. ANALYSIS

As stated on the record during the trial on September 12, 2024, the issues presented by the parties are as follows: (1) whether the Schappells hold a valid express easement to use the driveway under the 1991 agreement between Melvin R. Fetterhoff, Harry E. Hammaker, and Beryl R. Hammaker; (2) whether the Schappells are entitled to an implied easement by necessity to use the driveway; and (3) whether Pennsylvania's noticing statute makes Pauley a bona fide purchaser of his property without notice of the 1991 agreement. (Doc. 18, pp. 62–64, 67–68; *see also* Docs. 17, 19, 20, 21.) Additionally, the Court considers whether equitable principles might warrant the Schappells' continued driveway use. The Court discusses these issues below.

### A. The Validity of the 1991 Agreement.

Pauley argues that the 1991 agreement did not create an express easement because it was signed on July 31, 1991, one day after Melvin R. Fetterhoff conveyed his interest in the property to Jeffrey S. Louden via deed.[5] (Doc. 19, pp. 2–3.) The Schappells counter that the agreement's

---

[5] Pauley also disputes that the language of the 1991 agreement is sufficient to create an express easement. (Doc. 19, pp. 3–6.)

4

Case 1:23-ap-00068-HWV    Doc 22    Filed 02/05/25    Entered 02/05/25 14:26:47    Desc
Main Document    Page 4 of 12

terms should be enforced despite its "imperfect execution."[6] However, they cite no legal authority supporting this position.[7]

The Court agrees with Pauley. Express easements are typically created through deed reservation or an independent instrument, such as a contract or agreement. *Kapp v. Norfolk S. Ry. Co.*, 350 F. Supp. 2d 597, 607 (M.D. Pa. 2004) (collecting cases). Under Pennsylvania law, the terms of the instrument must be interpreted using "general principles of contract law." *Pocono Realty Co. v. Lamar Adver. Co.*, 395 F. App'x 903, 906 (3d Cir. 2010) (quoting *Hann v. Saylor*, 562 A.2d 891, 893 (Pa. Super. Ct. 1989)); *Zettlemoyer v. Transcon. Gas Pipeline Corp.*, 657 A.2d 920, 924 (Pa. 1995). Importantly, consistent with contract principles, a party cannot convey an easement over property they do not own. *Woodlawn Trustees, Inc. v. Michel*, 211 A.2d 454, 456 (Pa. 1965); *see also Sehrawat v. Rite ex rel. Pa., Inc.*, No. 1901 WDA 2019, 2020 Pa. Super. Unpub. LEXIS 3537, at *12 (Pa. Super. Ct. Nov. 13, 2020).

In this case, the 1991 agreement was signed by Melvin R. Fetterhoff on July 31, 1991—one day after he conveyed his interest in the property via deed to Jeffrey S. Louden. (Exhibit H.) Thus, as of the date of the 1991 agreement, Melvin R. Fetterhoff no longer owned the property and lacked the authority to create an easement over it. Under Pennsylvania law, a real property conveyance becomes legally effective upon the deed's delivery to the grantee. *In re Estate of Plance*, 175 A.3d 249, 260 (Pa. 2017). Moreover, "when a deed is acknowledged . . . as being signed, sealed, and delivered, . . . a presumption arises" that the delivery was absolute and unconditional unless rebutted by clear evidence to the contrary. *Id*. at 261 (quoting *Leiser v.*

---

[6] While raised as a counter-argument in the Schappells' reply brief rather than in their initial brief, the Court notes that Mystery Schappell appeared to have relied on the 1991 agreement as an express easement in deciding to purchase her property. (Doc. 18, pp. 36–39.)

[7] The Court notes that the caselaw cited in the Schappells' reply brief, particularly *Phillippi v. Knotter*, 748 A.2d 757 (Pa. Super. Ct. 2000), addresses easements by implication rather than the express easement argument raised by Pauley. As such, the Court finds the cited authority inapplicable to the issue at hand.

*Hartel*, 174 A. 106, 107 (Pa. 1934)). Here, the July 30, 1991 deed transferring the property from Melvin R. Fetterhoff to Jeffrey S. Louden was acknowledged as signed, sealed, and delivered. (Exhibit H.) Consequently, the presumption of absolute and unconditional delivery applies, and no evidence has been presented to rebut this presumption. Because Melvin R. Fetterhoff had no remaining interest in the property on July 31, 1991, he lacked the legal authority to create an easement. Furthermore, nothing in the agreement suggests that Jeffrey S. Louden, the subsequent owner, participated in or consented to its execution. Accordingly, the 1991 agreement is invalid as an express easement.

Having determined that the 1991 agreement did not create a valid express easement, the Court turns to whether the Schappells have an implied easement to use the driveway.

### B. Easement by Necessity.

To establish an easement by necessity, the party seeking the easement must prove three elements: (1) the properties were once owned by the same person (unity of title), (2) the properties were divided (severance of title), and (3) strict necessity to use the easement existed at the time of severance and continues to exist. *Bartkowski v. Ramondo*, 219 A.3d 1083, 1092 (Pa. 2019). The parties agree that the first two elements—unity and severance of title—have been met. (Doc. 18, pp. 76–78; Doc. 17, p. 2; Doc. 21, p. 2.) Thus, the sole issue is whether strict necessity exists for the Schappells' use of the driveway, both at the time of severance and at present.

In *Bartkowski*, the Pennsylvania Supreme Court emphasized that an easement by necessity arises only from "strict necessity," not mere inconvenience or economic hardship alone. *Bartkowski*, 219 A.3d at 1092. The Pennsylvania Superior Court has further clarified that strict necessity does not mean "utter impossibility" but requires evidence showing that

6

Case 1:23-ap-00068-HWV    Doc 22    Filed 02/05/25    Entered 02/05/25 14:26:47    Desc
Main Document    Page 6 of 12

alternative access to the property is "manifestly impracticable." *Olszewski v. Parry*, 283 A.3d 1257, 1263 (Pa. Super. Ct. 2022). Nonetheless, a right of way never exists "when a man can get to his own property through his own land," and "[c]onvenience is no foundation for the claim." *Id*. (quoting *Bartkowski*, 219 A.3d at 1092). Lastly, the *Bartkowski* Court explained that determining necessity is a "fact-intensive question" requiring individualized consideration of factors such as zoning restrictions and the likelihood of obtaining variances, federal or state regulations that prohibit alternative uses of the land, the land's topography and the feasibility of constructing alternative access, the environmental consequences of construction, the costs involved, and the existence and extent of these impediments at the time of severance. *Bartkowski*, 219 A.3d at 1096. These factors often require expert testimony to evaluate, especially where future outcomes of zoning or regulations disputes are uncertain. *Id*.

The Schappells argue they satisfy the strict necessity requirement because of their practical challenges, including Mystery Schappell's medical conditions and the alleged impracticality of constructing alternative access to their property. They contend that, without access to the existing driveway, their property would become "effectively unusable for daily living purposes, as safe and reliable ingress and egress would be unavailable." (Doc. 17, p. 3.) Pauley counters that the Schappells have failed to satisfy their burden of proof. He argues that they presented no evidence that the driveway was necessary when the Theurers divided the property or that alternative access from Notch Road is impractical or impossible. (Doc. 21, pp. 2–5.)

1. **Necessity at the Time of the Severance.**

The Schappells have not provided sufficient evidence to demonstrate that strict necessity existed in 1973 when the properties were divided. Under Pennsylvania law, the burden is on the

7

Case 1:23-ap-00068-HWV    Doc 22    Filed 02/05/25    Entered 02/05/25 14:26:47    Desc
Main Document    Page 7 of 12

claimant to establish that the easement was essential for accessing their property at the time of severance. *See Bartkowski*, 219 A.3d at 1095. However, the record lacks key evidence, such as surveys, historical access records, or expert testimony, to support this claim. The only testimony presented in this case came from Mystery Schappell and Pauley. No testimony was offered from previous property owners in the chain of title, nor was any expert analysis provided to address the conditions at the time of severance. Without this evidence, the Court cannot conclude that the driveway was necessary when the Theurers divided the property in 1973.

The ambiguity in the 1991 agreement further complicates the analysis. The 1991 agreement states that "Harry E. Hammaker and Beryl R. Hammaker and Melvin R. Fetterhoff have *jointly put in a driveway* that goes through each property in various proportions and they have continued to use this as a driveway to their mutually owned premises *for and during the time since 1973*." (Exhibit I (emphasis added).) While this suggests the driveway was constructed around 1973, the record indicates that Melvin R. Fetterhoff did not acquire his interest in the property until 1976. (*See* Exhibit G.) This discrepancy raises questions about whether the driveway even existed when the property was divided into two parcels on November 13, 1973. (*See* Exhibit C.)

Moreover, Mystery Schappell's testimony provided no clarification on this issue. Although she stated that the driveway had been in place since the 1970s, she could not identify a specific date. (Doc. 18, pp. 35–36.) In the absence of evidence establishing that the driveway existed at the time of severance and that its use was strictly necessary, the Court finds that the Schappells have failed to meet their burden of proof. *See Bartkowski*, 219 A.3d at 1095 ("The strict necessity standard remains a daunting hurdle to overcome for a landowner seeking an easement by necessity.").

### 2. Necessity for Present Use.

The Schappells have also failed to demonstrate that using the driveway is strictly necessary for their present use of the property. Pennsylvania law imposes a high evidentiary burden to establish strict necessity, requiring proof that the property would be rendered "inaccessible and, thus, unusable" without the easement. *Bartkowski*, 219 A.3d at 1096. The Schappells provided no evidence to meet this standard. As previously stated, the testimony of Mystery Schappell and Pauley was not supported by expert analysis, surveys, or other documentation demonstrating that alternative access is impractical or unfeasible. This evidentiary deficiency is particularly significant given the guidance provided by *Bartkowski*, which emphasizes the need for individualized consideration of factors such as zoning restrictions, topographical challenges, environmental impacts, and costs, some of which may require expert testimony. *Bartkowski*, 219 A.3d at 1096.

While Mystery Schappell testified that her medical conditions make vehicle access important and that her property's topography—including its "lumpy" and "uphill" nature—creates challenges for alternative access, such testimony alone is insufficient to establish strict necessity. *See Olszewski*, 283 A.3d at 1263 (noting that strict necessity requires evidence of manifest impracticability). Indeed, the undisputed testimony establishes that the Schappells can access their property from Notch Road on foot, which, under Pennsylvania law, precludes the existence of an easement by necessity. *See Bartkowski*, 219 A.3d at 1092 (quoting *Ogden v. Grove*, 38 Pa. 487, 491 (Pa. 1861) (A right of way never exists "when a man can get to his own property through his own land[.]")). (*See also* Exhibit J; Doc. 18, pp. 13, 43–44.)

Moreover, the Schappells' equitable arguments regarding the long-standing use of the driveway and the unique configuration of their property, including the location of their parking

area and septic system, do not meet the "strict necessity" standard under Pennsylvania law, especially when combined with the lack of expert testimony as to zoning restrictions, topographical challenges, and environmental impacts. Convenience, historical use, and equitable concerns do not override the absence of strict necessity or a valid express easement. *See Bartkowski*, 219 A.3d at 1092. Thus, while the existing driveway may provide convenient access to the Schappells' garage and parking area, convenience alone is insufficient for establishing an easement by necessity. *Id.*; *Olszewski*, 283 A.3d at 1263. The Schappells' failure to present evidence addressing any of the required factors outlined in *Bartkowski* leaves the Court without a sufficient record to conclude that constructing a new driveway is impractical or that strict necessity exists for the continued use of the existing driveway. Accordingly, the Court finds that the Schappells have failed to meet their burden to demonstrate a necessity for present use under Pennsylvania law.

### C. Implied Easement by Prior Use.[8]

The Court also considers whether the Schappells are entitled to an implied easement by prior use. To establish such an easement, the Schappells must establish that the driveway was visibly and continuously used for access at the time of severance and that the grantor intended for that use to continue after conveyance. *See Kapp*, 350 F. Supp. 2d at 609, 611; *Phillippi v. Knotter*, 748 A.2d 757, 761–62 (Pa. Super. Ct. 2000) (collecting cases). As with other implied easements, "[a]n easement by implication could have arisen only at the time at which ownership of the two parcels in question first became separated." *Phillippi*, 748 A.2d at 762.

---

[8] The Court notes that the Schappells did not raise the argument for an implied easement by prior use in their initial brief, focusing instead on an easement by necessity. (*See* Doc. 17.) However, the Court perceives the Schappells to have raised the argument that they possess an implied easement by prior use in their reply brief. Although arguments raised for the first time in a reply brief are generally considered waived, *see Garza v. Citigroup Inc.*, 881 F.3d 277, 284–85 (3d Cir. 2018), the Court addresses this argument for the sake of completeness.

The Schappells' apparent contention that they are entitled to an implied easement by prior use fails for the same evidentiary deficiencies discussed above in the context of implied easements by necessity. Specifically, the Court has already found that it is unclear whether the driveway even existed when the Theurers divided the property into two parcels on November 13, 1973. The ambiguity in the 1991 agreement, which states that the driveway was "jointly put in" by subsequent property owners, underscores the lack of evidence regarding the driveway's existence or use at the time of severance. (Exhibit I.)

The absence of any testimony or records from prior property owners, surveys, or other evidence establishing the driveway's status in 1973 creates further difficulty for the Court to conclusively determine that the driveway was intended to be shared after severance. Indeed, it is unclear which property owner the Court should identify as the grantor to evaluate the easement by prior use standard since it is unclear when the driveway was constructed. Without this essential evidence, the Schappells have not met their burden of proving the elements required for an implied easement by prior use.[9]

---

[9] Because of the Court's conclusions that the Schappells neither possess an express easement nor an implied easement by necessity or prior use, the Court need not address the remainder of Pauley's arguments. As such, the Court will likewise decline to consider the Schappells' counter-arguments to same.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the Schappells do not hold a valid express easement, nor have they demonstrated an implied easement by necessity or prior use. Additionally, Pennsylvania law does not permit equitable considerations to override these findings. Accordingly, Pauley's requested relief will be granted, and an appropriate order will be issued.

By the Court,

_____
Henry W. Van Eck, Chief Bankruptcy Judge
Dated: February 5, 2025